# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

HAROLD E. TUTTLE,

        Plaintiff,

    vs.                            No. Civ. 99-912 SC/WWD

THE NEW MEXICO LAW
ENFORCEMENT ACADEMY BOARD,
and DIRECTOR DARREL G. HART,
in his individual and official capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on (1) Defendant New Mexico Law Enforcement Academy Board's Motion for Summary Judgment, filed May 12, 2000 [Doc. No. 10], and (2) Defendant Darryl G. Hart's Motion for Summary Judgment, filed May 12, 2000 [Doc. No. 12].[1]  The Court, having read the motions, memoranda, and exhibits submitted by the parties, and being apprised of the applicable law, concludes that the Defendants' motions are partially well-taken.

## I.    BACKGROUND

According to Plaintiff, Defendant New Mexico Law Enforcement Academy Board (Defendant NMLEA Board or the Board) is a political subdivision of the State of New Mexico charged with the certification of peace officers in New Mexico.  According to

---

[1] Both Defendants filed a memorandum in support of their motions on June 9, 2000.  In response to both motions, Plaintiff filed a motion and a memorandum on June 9.  Neither Defendant filed a reply.

Plaintiff, Defendant Hart is Director of the New Mexico Law Enforcement Academy (NMLEA or the Academy), charged with the Academy's administration, and an employee of the State of New Mexico.  According to Defendants, Defendant Hart is the Director of the Defendant NMLEA Board (a non-voting position).  In this role, according to Defendants, Defendant Hart reviews matters which come to his attention regarding New Mexico law enforcement officers whose continued fitness and qualification to serve as such officers has been called into question and makes recommendations to the Board regarding any action to be taken regarding these officers' law enforcement certifications.

Plaintiff was employed as a Special Agent with the Special Investigations Division of the New Mexico Department of Public Safety (the Department).  He also was certified by Defendant NMLEA Board as a peace officer in New Mexico.  However, in two separate, but related, courses of action he was terminated by the Department and had his certification revoked by the Defendant NMLEA Board.  The revocation of the certification is at issue in this case.

The facts as to Plaintiff's termination are as follows.  On August 15, 1997, the Department (through the Office of Professional Standards and Internal Affairs) completed an Administrative Investigation regarding allegations that Plaintiff had used his assigned vehicle without authorization and falsified official documents.  The Administrative Investigation report specifically concluded that Plaintiff had inappropriately used his assigned vehicle on 11 occasions in 1996, had altered gasoline credit card receipts on 11 occasions in 1996, and had altered his daily activity log mileage records on 27 occasions

in 1996 in an attempt to cover up his unauthorized use of his assigned car.

On August 25, 1997, the Department Deputy Secretary issued a Notice of Contemplated Disciplinary Action, informing Plaintiff that the Department was contemplating terminating him on grounds of misconduct, inefficiency, incompetency, insubordination, violation of Department policies, and continuing unsatisfactory performance. On September 8, 1997, the Department Secretary issued a Notice of Final Disciplinary Action, terminating Plaintiff. On September 23, 1997, Plaintiff filed a Notice of Appeal with the New Mexico Personnel Board regarding his termination. In January 1998, the Personnel Board held a hearing regarding the Department's termination of Plaintiff. On September 18, 1998, the Secretary of the Personnel Board issued a decision affirming Plaintiff's termination from the Department. On October 21, 1998, Plaintiff filed a Notice of Appeal with the Second Judicial District Court of the State of New Mexico appealing the decision. The matter is pending before that court.

The facts as to the revocation of Plaintiff's certification are as follows. On October 27, 1997, the Department's Assistant Counsel sent a memorandum to Defendant Hart informing him that Plaintiff had been terminated by the Department for reasons that indicated an absence of good moral character and indicated fraud and dishonesty. The memorandum was sent pursuant to state law, N.M. Stat. Ann. § 29-7-13.[2] The

_____

[2] Section 29-7-13, entitled refusal, suspension or revocation of certification, does not explicitly provide that the Department must notify Defendant NMLEA Board. Rather, it provides that the Board after consulting with the employing agency, may suspend or revoke a police officer's certification. See N.M. Stat. Ann. § 29-7-13 (1997 Repl. Pamp.).

Department also provided Defendant Hart with documents pertaining to Plaintiff's termination, including the Notice of Final Disciplinary Action and the Administrative Investigation report.

On February 5, 1998, Defendant Hart issued a Notice of Contemplated Action, informing Plaintiff that the Defendant NMLEA Board was contemplating suspending or revoking his law enforcement certification, pursuant to N.M. Stat. Ann. § 29-7-13(A) (1997 Repl. Pam.) and NMLEA Board Rule A4(B), because he had committed acts of dishonesty or fraud. The Notice informed Plaintiff of the general nature of the evidence against him, which if not rebutted or explained, justified the suspension or revocation of his certification. The Notice further informed Plaintiff that the Board would suspend or revoke Plaintiff's certification unless he submitted, within seven days, a written response or written request for the opportunity to respond orally.

On February 13, 1998, Plaintiff's counsel, Mr. Mills, on Plaintiff's behalf, responded to the Notice of Contemplated Action by letter. In this letter, Mr. Mills stated that the allegations were denied and that Plaintiff had not been afforded due process because there had been no adjudication of the alleged infractions. Mr. Mills further informed that the Board's actions in revoking Plaintiff's certification were inconsistent and appeared to be vindictive in nature, given the numerous other and more serious infractions by other certified officers in New Mexico who had not had their certifications revoked or even had such revocation contemplated by the Board. Mr. Mills ended by requesting an opportunity to present oral arguments.

4

Defendant Hart responded by letter to Mr. Mills on February 18, informing him that he had received the request for the opportunity to respond orally and that a meeting date had been set for February 19, 1998. Defendant Hart made no mention of Mr. Mills' allegations that Plaintiff was being dissimilarly treated. (Defendant Hart does not appear to have mailed a copy of this letter to Plaintiff.) Plaintiff or his counsel canceled the scheduled hearing. The meeting date was rescheduled for March 3, 1998, and Mr. Mills was informed in writing of this date on February 26. (It does not appear that Defendant Hart mailed Plaintiff a copy of this letter.) Again, Plaintiff or his counsel canceled the hearing. On March 4, 1998, Defendant Hart sent Mr. Mills a letter, per their conversation that morning, that the hearing date would be extended. Mr. Mills was requested to provide dates Plaintiff would be available for a hearing. (Again, it does not appear that a copy of this letter was mailed to Plaintiff by Defendant Hart.) Neither Plaintiff nor his counsel rescheduled the hearing date.

On March 26, 1998, Defendant Hart issued a Notice of Final Decision, informing Plaintiff of his recommendation that Plaintiff's certification be revoked. The Notice contained detailed findings and conclusions. The Notice further informed Plaintiff that unless he requested a hearing before the Defendant NMLEA Board within 30 days of receipt of the Notice, the Board might accept Defendant Hart's recommendation and revoke his certification and that such Board action would be considered final. The Notice was sent to Plaintiff, with a copy sent to his counsel. Neither Plaintiff nor his counsel requested a hearing.

On May 13, 1998, Defendant NMLEA Board met regarding the issue of Plaintiff's certification.  Plaintiff was notified of this meeting and understood that he could attend the meeting to present his side of the issue(s).  Plaintiff did not attend the meeting.  At the meeting, the Board accepted Defendant Hart's finding and conclusions and his recommendation of revocation of Plaintiff's certification.  The Board further voted to issue an Order of Decertification.

On February 11, 1999, Plaintiff filed a Complaint against Defendants in the Second Judicial District Court of the State of New Mexico.  Plaintiff filed an Amended Complaint on July 14, 1999.  In his Amended Complaint, Plaintiff alleges that, in revoking his certification, Defendants treated him dissimilarly and discriminated against him and deprived him of his liberty interest in future employment, in violation of his federal equal protection and procedural due process rights and 42 U.S.C. § 1983. Plaintiff further alleges that the conduct of Defendant Hart, in his individual capacity, constituted the state law tort of intentional infliction of emotional distress.  Plaintiff seeks reinstatement of his certification; damages for emotional distress in the amount of $100,000; compensatory damages for reputational injury and humiliation in the amount of $1,000,000; punitive damages in the amount of $2,000,000; post-judgment interest; and attorneys fees.  Defendants filed a Notice of Removal on August 13, 1999, removing the action to this Court pursuant to 28 U.S.C. § 1441(b) (original jurisdiction).

I note that Defendant Hart's supporting memorandum to his summary judgment motion makes reference to and incorporates (1) the statement of material facts set forth in

6

and (2) the exhibits attached to Defendant NMLEA Board's supporting memorandum to

its summary judgment motion.

## II.    LEGAL STANDARDS

### A.  Summary Judgment

A motion for summary judgment should be granted only when there is no genuine

issue of material fact and, as a matter of law, the moving party is entitled to judgment.

See Fed. R. Civ. P. 56(c).  When ruling on a motion for summary judgment, a court must

construe the facts in the light most favorable to the nonmovant.  See Magnum Foods, Inc.

v. Continental Casualty Co., 36 F.3d 1491, 1497 (10th Cir. 1994).  All doubts must be

resolved in favor of the existence of triable issues.  See World of Sleep, Inc. v. La-Z-Boy

Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).   A court's job in ruling on a motion for

summary judgment is not to weigh the evidence, make credibility determinations, or draw

inferences from the facts, but, rather, to determine whether there is a genuine issue for

trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 255 (1986).  The inquiry a

court must make is "whether the evidence presents a sufficient disagreement to require

submission to a [fact finder] or whether it is so one-sided that one party must prevail as a

matter of law."  Id. at 251-52.  The moving party bears the initial burden of showing the

absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317,

325 (1986).  Only then does the burden shift to the nonmovant to come forward with

evidence showing that there is a genuine issue of material fact under Rule 56(e) or to

explain why he cannot do so under Rule 56(f).  See United States v. Simons, 129 F.3d

1386, 1388 (10th Cir. 1997); <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887,

891 (10th Cir. 1991). "Conclusory allegations made by a non-movant will not suffice."

<u>Simons</u>, 129 F.3d at 1388. Relevant, "'sufficient evidence . . . must be identified by

reference to an affidavit, a deposition transcript, or a specific exhibit incorporated

therein.'" <u>Id.</u> at 1389 (quoting <u>Thomas v. Wichita Coca-Cola Bottling Co.</u>, 968 F.2d

1022, 1024 (10th Cir. 1992)).

**B. Qualified Immunity**

Special rules are applied when a defendant raises the defense of qualified

immunity. Once the defendant pleads qualified immunity, the burden shifts to the

plaintiff to demonstrate (1) the defendant's conduct violated the law, and (2) the relevant

law was clearly established when the alleged violation occurred. <u>See</u> <u>Albright v.</u>

<u>Rodriguez</u>, 51 F.3d 1531, 1534 (10th Cir. 1995); <u>see also</u> <u>Anderson v. Creighton</u>, 483

U.S. 635, 640 (1987). Unless both prongs of the test are satisfied, qualified immunity

must be granted. <u>See</u> <u>Clanton v. Cooper</u>, 129 F.3d 1147, 1153-54 (10th Cir. 1997). "In

showing that the law was clearly established, the plaintiff does not have to show that the

specific action at issue had been held unlawful, but the alleged lawfulness of the

defendant's conduct must be apparent in light of preexisting law." <u>Armijo v. Wagon</u>

<u>Mound Pub. Sch.</u>, 159 F.3d 1253, 1260 (10th Cir. 1998). "The contours of the right must

be sufficiently clear that a reasonable official would understand that what he is doing

violates that right." <u>Anderson</u>, 483 U.S. at 640. To show a right is clearly established,

there must be Supreme Court or Tenth Circuit law on point, or the weight of authority

8

from other courts must support the plaintiff's proposition.  See Armijo, 159 F.3d at 1260.

If the plaintiff meets his burden of coming forward with facts or allegations which would

demonstrate that the defendant's alleged violation should have been apparent in light of

preexisting law, then the defendant assumes the normal summary judgment burden of

establishing that no material facts remain in dispute that would defeat his claim of

qualified immunity.  See Woodward v. City of Worland, 977 F.2d 1392, 1396-97 (10th

Cir. 1992); Jantz v. Muci, 976 F.2d 623, 627 (10th Cir. 1992); see also Brown v. City of

Belen, No. 97-2139, 141 F.3d 1184, 1998 WL 115856 at *3 (10th Cir. Mar. 16, 1998)

(unpublished disposition).

## III.    DISCUSSION

### A.  "Arms of the State"

A preliminary issue, unnoted or briefed by the parties, is whether the Defendants

are "arms of the state," either as an entity or an official.  See Sutton v. Utah State Sch. for

the Deaf and Blind, 173 F.3d 1226, 1232 (10th Cir. 1999); Buchwald v. University of

New Mexico Sch. of Med., 159 F.3d 487, 494 (10th Cir. 1998); see also Mt. Healthy City

Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977).  Defendant NMLEA Board

contends that it is a state governmental entity.[3]   Defendant Hart contends he is a state

---

[3]  Defendant NMLEA Board oversees the development and operation of the New Mexico Law
Enforcement Academy (Academy).  See N.M. Stat. Ann. § 29-7-4 (1997 Repl. Pam.).  It appears to be an
instrumentality of the state executive branch, administratively attached to the New Mexico Public Safety
Department.  See id. § 9-19-8 (1994 Repl. Pam.).  While functioning independently of the Department, the
Board must submit budgetary requests through the Department and must submit an annual report to the
Governor. See id. §§ 9-1-7; 29-7-4(D).  Board members are entitled to per diem and mileage as provided
under the State Per Diem and Mileage Act.  See id. § 29-7-3(D).  The Chair of the Board is the state

employee.[4]  Because Plaintiff does not challenge these characterizations and because

there appears to be merit to the characterizations, I will assume for purposes of this

opinion, that the Defendants are "arms of the state."

## B.  Eleventh Amendment Immunity

Defendant NMLEA Board contends that as a state governmental entity, it is

protected from suit in federal court by Eleventh Amendment immunity.  Accordingly, it

alleges, Plaintiff's federal claims against it must be dismissed.[5]  Defendant Hart, in his

official capacity, contends that as a state official, he also is protected from suit by the

---

Attorney General.  See id. § 29-7-3(B). The Board's duties include approving or disapproving the
appointment of the Director of the Academy by the Public Safety Department Secretary; developing and
implementing law enforcement training; prescribing qualifications for and training of instructors; adopting,
publishing, and filing in accordance with the State Rules Act, regulations and rules regarding the
Academy's operation and the implementation of enforcement of the Law Enforcement Training Act; and
issuing, granting, denying, renewing, suspending, or revoking a peace officer's certification.  See id. § 29-
7-4.  The Academy's personnel are part of the Public Safety Department's Training and Recruiting
Division.  See id. § 9-19-7(E).

[4]  Although Defendant Hart's job position is unclear, it appears that in all likelihood he is a state
official.  Plaintiff alleges in his Amended Complaint that Defendant Hart is the Director of the Academy,
charged with the Academy's administration.  Defendant Hart avers that he is the Director of the Defendant
NMLEA Board.  He is referred to by that title, as well, in the administrative documents and
correspondence attached as Defendants' exhibits to their motions. There is no provision, however, for such
a position under New Mexico statutory law.  The term "Director" in the relevant law refers to the Director
and chief executive officer of the Academy, not the Board.  See N.M. Stat. Ann. § 29-7-5(A), 29-7-7(E)
(1997 Repl. Pam.). However, the Director is also the executive secretary of the Board and carries out
policy as set by the Board.  See id. § 29-7-5(D), (E).  Under Academy or Board Rules or practice it is
possible that the Director of the Academy, as executive secretary of the Board, is considered the Director of
the Board. Academy personnel are part of the Training and Recruiting Division of the Public Safety
Department, and thus are state employees.

[5]  I note that if the Defendants were protected by Eleventh Amendment immunity from liability for
the federal claims, I would lack subject matter jurisdiction over these claims and would remand these
counts to the state court – not dismiss them as requested by Defendants.  See Archuleta v. Lacuesta, 131
F.3d 1359 (10th Cir. 1997); Flores v. Long, 926 F.Supp. 166 (D.N.M. 1995).

Eleventh Amendment and that Plaintiff's federal claims against him must be dismissed. Plaintiff failed to respond to these arguments in his response.[6]

Generally, state entities or instrumentalities and state employees, sued in their official capacities, are protected from suit in federal court by the Eleventh Amendment. However, this immunity is not absolute.  Congress may abrogate a defendant's Eleventh Amendment immunity or a defendant may waive its immunity.  See Ellis v. University of Kansas Med. Ctr., 163 F.3d 1186, 1195 (10th Cir. 1998).  Furthermore, Eleventh Amendment immunity does not protect state government officials sued in their official capacity for prospective equitable relief.  See Buchwald, 159 F.3d at 495.  By removing this cause of action to federal court and litigating the merits, Defendant NMLEA Board and Defendant Hart, in his official capacity, have waived any Eleventh Amendment immunity protecting them from suit.  See McLaughlin v. Board of Trustees of State Colleges, 215 F.3d 1168, 1170 (10th Cir. 2000); Sutton, 173 F.3d at 1233-36.[7] Therefore, the request of Defendant NMLEA Board and Defendant Hart, in his official capacity, for summary judgment as to the federal claims on the ground of Eleventh

---

[6] In his response motion, in which Plaintiff lists his responsive arguments, Plaintiff states that his claims against Defendant NMLEA Board are not barred by the Eleventh Amendment because his claims are against the individual members of the Board in their individual capacities.  However, there is no mention of this argument in Plaintiff's supporting memorandum to his response.  There also is no indication in the body of the Amended Complaint, in which Plaintiff describes Defendant NMLEA Board as a political subdivision of the State of New Mexico, nor in the caption of the Amended Complaint that the suit is against the Board members individually.  I conclude, therefore, that this argument was listed in error and do not consider it.

[7] Defendant NMLEA Board cited Sutton in its brief to support the proposition it was not a "person" under § 1983, but failed to note its applicability to the issue of Eleventh Amendment immunity.

11

Amendment immunity will be denied.

## C.  § 1983 "Persons"

Defendants contend that Plaintiff cannot pursue constitutional claims against the State, its entities, or official capacity employees because they are not "persons" subject to suit under § 1983, citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Plaintiff did not respond to this argument.

"A cause of action under § 1983 requires the deprivation of a civil right by a 'person' acting under color of state law."  McLaughlin, 215 F.3d. at 1172; see 42 U.S.C. § 1983; Sutton, 173 F.3d at 1237.  States are not "persons" under § 1983.  See Will, 491 U.S. at 71; McLaughlin, 215 F.3d at 1172.  Governmental entities that are "arms of the state" for Eleventh Amendment purposes also are not "persons" under § 1983.  See McLaughlin, 215 F.3d at 1172; Harris v. Champion, 51 F.3d 901, 905-06 (10th Cir. 1995).  As stated above, I have assumed for purposes of this opinion that Defendant NMLEA Board is an "arm of the state."   Defendant NMLEA Board is, thus, not a "person" under § 1983.

Officials acting in their official capacities generally are not "persons" under § 1983.  See Will, 491 U.S. at 71; McLaughlin, 215 F.3d at 1172.[8]  An exception to this rule, pursuant to the Ex parte Young doctrine, is if the official has been sued for

_____

[8] A state official in his individual capacity is a "person" under § 1983.  See Sutton, 173 F.3d at 1237.  Consequently, Plaintiff's federal claims for damages against Defendant Hart, in his individual capacity, are not precluded except where Defendant Hart's actions are protected by qualified immunity.

prospective equitable relief.[9]  See Will, 491 U.S. at 71 n.10; McLaughlin, 215 F.3d at

1172 n.2; MCI Telecomm. Corp. v. Public Serv. Comm'n of Utah, 216 F.3d. 929, __,

2000 WL 783382 at *9 (10th Cir. 2000); see also Ex parte Young, 209 U.S. 123, 159-60

(1908).  The relief sought by Plaintiff includes prospective equitable relief –

reinstatement of his certification.  Plaintiff, however, does not specify against which

Defendant he is seeking this relief.  If it is sought against Defendant Hart in his official

capacity, Defendant Hart arguably would be a "person" for § 1983 purposes.

       Neither party raised this issue. After reviewing the relevant state statutory law and

relevant exhibits attached to Defendant NMLEA Board's supporting memorandum, I

conclude that while Defendant Hart may recommend to Defendant NMLEA Board that a

law enforcement officer's certification be revoked or reissued, he does not have the

authority to actually decertify or recertify the officer.  See N.M. Stat. Ann. § 29-7-4(G)

(is Board's duty and in its power to issue, grant, deny, renew, suspend or revoke

certification), § 29-7-5 (Director's power and duties do not specifically include granting

or issuing certifications); see also Def. NMLEA Bd.'s Supp. Mem., Ex. 1(B) (Notice of

Final Decision) (Director Hart made findings and recommendations to Board that

Plaintiff's certification should be revoked, in accordance with Academy Rule 10 NMAC

29.1.13.1.1), Ex. 1(C) (Order of Decertification) (Board accepted Director Hart's

_____

       [9] The Supreme Court has recognized two new limitations to the Ex parte Young doctrine.  See
Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997); Seminole Tribe of Florida. v. Florida, 517
U.S. 44 (1996). Neither of these restrictions are implicated here.  See Ellis, 163 F.3d at 1197-98;
Buchwald., 159 F.3d at 495 n.6; ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1189-90 (10th Cir. 1998),
cert. denied, 525 U.S. 1122 (1999).

findings and conclusions and revoked Plaintiff's certification).  I note further that Plaintiff does not contest that Defendant Hart's role is "to make recommendations to the Defendant NMLEA Board regarding potential action concerning [certification of the law enforcement officers]."  Def. NMLEA Bd.'s Supp. Mem. at 4 (statement of undisputed fact ¶ 5); Pl.'s Resp. at 3 (incorporating Defendant NMLEA Board's statement of undisputed facts ¶¶ 1-6, 13-23)  Consequently, I construe Plaintiff's Amended Complaint as requesting the equitable relief of recertification against Defendant NMLEA Board and not against Defendant Hart.  Therefore, Defendant Hart, in his official capacity, is not a "person" for § 1983 purposes.

**D.  § 1983 Claims**

Alternatively, even if Defendant NMLEA Board and Defendant Hart, in his official capacity, were "persons" under § 1983, summary judgment in Defendants' favor would still be mandated as to Plaintiff's federal claims because Plaintiff has failed to carry his summary judgment burden.  Furthermore, Defendant Hart, in his individual capacity, is protected by qualified immunity as to these claims.

In Count I of his Amended Complaint, Plaintiff alleges that in revoking his certification Defendants treated him differently than similarly situated persons in violation of the Equal Protection Clause of the Fourteenth Amendment and § 1983.  In Count II, Plaintiff alleges that he was treated differently because of his race and or ethnicity, in violation of the Equal Protection Clause and § 1983.  In Count III, Plaintiff contends that in revoking his certification (among other conduct) without a hearing on the

14

merits, Defendants violated his procedural due process rights under the Fourteenth

Amendment and § 1983.

1.      Equal Protection Clause

        Looking first at Plaintiff's two Equal Protection Clause claims, Plaintiff does not

allege that a fundamental right is at stake or that he is a member of a protected class.

"Thus, in order to prevail on his equal protection claim[s], he must show that

[Defendants] treated him differently than others 'similarly situated . . . and that this

different treatment lacked a rational basis.'" Tonkovich v. Kansas Bd. of Regents,

159 F.3d 504, 532 (10th Cir. 1998) (quoting Landmark Land Co. of Oklahoma v.

Buchanan, 874 F.2d 717, 722 (10th Cir. 1989) (second alteration in Tonkovich)). Plaintiff

alleges in Count I of his Amended Complaint that Defendants violated his equal

protection rights because they did not revoke (or recommend the revocation of) the

certification of two law enforcement officers (Chris Maes and Pete Bustamonte) who

admitted to or were found guilty of worse offenses than he is alleged to have committed.

Plaintiff further alleges in Count II that his equal rights were violated because he is Anglo

and the two other officers are Hispanic and the revocation of his certificate was racially

or ethnically discriminatory.

        Defendants argue that they have not violated Plaintiff's equal protection rights in

revoking his certification and that Plaintiff has no evidence to support his contentions that

they did.  Thus, they contend, there are no material questions of fact at issue and

summary judgment should be granted in their favor.  In support of their contentions,

Defendant Hart avers that during his actions at issue he was acting within the scope and course of his employment and in strict accordance of his duties. Defendant Hart avers that he issued the Notice of Contemplated Action based on the memorandum sent him by the Assistant Counsel for the Public Safety Department informing him that Plaintiff had been terminated by the Public Safety Department for reasons that indicated dishonesty, fraud, and absence of good moral character and on the attached Public Safety Department's Notice of Final Disciplinary Action and Administrative Investigation report. Defendant Hart further avers that his decision to issue the Notice of Contemplated Action and the Notice of Final Decision was not motivated or influenced by Plaintiff's race or ethnicity. Defendant Hart also avers that based on his personal knowledge Defendant NMLEA Board was not motivated or influenced by Plaintiff's race or ethnicity in deciding to revoke Plaintiff's certification. (None of the Board members submitted an affidavit.) Defendants also submitted portions of Plaintiff's March 1, 2000 deposition transcript, in which Plaintiff stated that he did not believe he had any evidence that (1) members of the Board acted improperly regarding the revocation of his certification, (2) any member of the Board in deciding to revoke his certification was motivated by his ethnicity, or (3) in recommending Plaintiff's certification revocation, Defendant Hart was motivated by Plaintiff's ethnicity.[10] Plaintiff further stated in his deposition that he had no evidence, with the exception of hearsay, regarding what action,

---

[10] The discovery deadline was March 27, 2000.

if any, the Defendant Board took in regards to Chris Maes.  He also stated that he had no evidence (1) that the Defendant Board or Defendant Hart had knowledge that Pete Bustamonte admitted to committing fraud and concealing his identity or (2) whether Pete Bustamonte currently held his certification.  Finally, when asked whether his Equal Protection Clause allegations in his Amended Complaint "all relate[d] to the ethnicity issue," Plaintiff replied affirmatively.  Def. NMLEA Bd.'s Supp. Mem., Ex. C(2) (Pl.'s Dep. at 123).

In his response, Plaintiff states that he has legally competent admissible evidence of improper disparate treatment and discrimination in the form of oral testimony of Defendant Hart, Chris Maes, Pete Bustamonte, and other disclosed witnesses.  Future oral testimony of unknown content is insufficient to oppose a supported motion for summary judgment.  Plaintiff attaches no affidavits, deposition excerpts, interrogatory answers, or admissions to counter the evidence provided by Defendants in support of their position or to support his bare allegations in his Amended Complaint that he was similarly situated with Chris Maes and Pete Bustamonte, that they were treated more favorably than he was, that Defendant Hart acted improperly and in a discriminatory manner in acting on the Assistant Counsel's memorandum in the manner he did, or that the Board acted in an improper and discriminatory manner when it accepted Defendant Hart's recommendation and decertified him.  Nor does Plaintiff offer any explanation, pursuant to Rule 56(f), of why he cannot present affidavit facts to support his position or rebut Defendants'.  Furthermore, Plaintiff incorporates in his response Defendants'

17

statement of material fact that Defendant Hart, at all times at issue, acted "within the course and scope of his employment and in strict accordance with his duties as Director of the Defendant NMLEA Board." Def. NMLEA Bd.'s Supp. Mem. at 4, ¶ 5.

Plaintiff has failed to rebut the matters set forth in the affidavit and deposition transcript submitted as exhibits by Defendants. Given the uncontroverted, operative facts, there is no evidence that Defendant NMLEA Board, in revoking Plaintiff's certification, did so in a disparate or discriminatory manner. Furthermore, there is no evidence, given the uncontroverted, operative facts, that Defendant Hart's recommendation of the revocation of Plaintiff's certification was disparate or discriminatory. Therefore, as to Counts I and II, summary judgment will be granted in favor of Defendant NMLEA Board and Defendant Hart, in his official capacity. Additionally, because there is insufficient evidence that Defendant Hart's conduct caused a deprivation of Plaintiff's equal protection rights, Defendant Hart, in his individual capacity, is protected by qualified immunity as to Counts I and II.

2.    Due Process Clause

In Count III of his Amended Complaint, Plaintiff alleges that he has lost his liberty interest in future employment, in violation of his federal constitutional rights and § 1983. He specifically alleges that Defendants have stigmatized him by concluding and publishing that he had committed acts of dishonesty and fraud (and by revoking his certification) without a due process hearing on the merits of such allegations and that as a result he cannot secure employment in law enforcement or related fields. Part of the

18

relief he requests is compensatory damages for reputational injury and humiliation.   In

their motions, Defendants construe this claim as an allegation that they have deprived

Plaintiff of his property interest in his certification in violation of the Due Process Clause

of the Fourteenth Amendment.   Although in his response Plaintiff summarizes Count III

as a liberty interest in future employment claim, he does not repudiate Defendants'

characterization of the claim as one involving a property interest in the certification.   In

fact, he argues in a later section of his response that Defendants deprived him of his

procedural due process rights in revoking his certification without a hearing on the merits

and that it is undisputed that he had a vested property interest in his certification.   I

conclude, therefore, that Plaintiff has constructively replaced his liberty interest (in future

employment) claim with a property interest (in his certification) claim.

Under the Due Process Clause of the Fourteenth Amendment, states are prohibited

from depriving a person of liberty or property without due process of law. "To assess

whether an individual was denied procedural due process, courts must engage in a two-

step inquiry: (1) did the individual possess a protected interest such that the due process

protections were applicable; and if so, then (2) was the individual afforded an appropriate

level of process." Hatfield v. Board of County Comm'rs, 52 F.3d 858, 862 (10th Cir.

1995) (internal quotations omitted).   Defendants, for the purpose of their motions, do not

contest that Plaintiff has a protected property interest in his certification.   Therefore, the

question before the Court is whether Plaintiff received the process due him.

Due process requires that the plaintiff have had an opportunity to be heard at a

meaningful time and in a meaningful manner before he is deprived of his protected property right.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 541-42 (1985); Board of Regents v. Roth, 408 U.S. 564, 569 (1972).  This requirement generally includes three elements:  (1) an impartial tribunal; (2) notice of charges given a reasonable time before the hearing; and (3) a predeprivation hearing.  See Langley v. Adams County, 987 F.2d 1473, 1480 (10th Cir. 1993); Powell v. Mikulecky, 891 F.2d 1454, 1458-59 (10th Cir. 1989); see also Loudermill, 470 U.S. at 545-46.  Plaintiff contends that Defendants violated his procedural due process rights by failing to provide him a hearing on the merits before revoking his certification.  Therefore, only the third element is at issue here.

While no predeprivation hearing was held before Plaintiff's certification was revoked, he was given multiple opportunities for such a hearing.  In the Notice of Contemplated Action, Plaintiff was informed that (1) unless rebutted or explained, the conduct described in the Notice was sufficient grounds for the Board to suspend or revoke his certification and (2) the Board would suspend or revoke his certification unless a written response or a written request to respond orally was submitted to the Board via Defendant Hart.  While Plaintiff's counsel, Mr. Mills, did submit a written response on Plaintiff's behalf and requested an oral hearing, Plaintiff or his counsel canceled the original hearing date and the rescheduled hearing date.  Although Defendant Hart offered to set up a third hearing date,  Plaintiff or his counsel never rescheduled.  Consequently, Defendant Hart issued a Notice of Final Decision on March 26, 1998, recommending to

Defendant NMLEA Board that Plaintiff's certification be revoked.  Plaintiff was

informed in this Notice that he could secure a hearing before Defendant NMLEA Board if

such a request was in writing and made within 30 days of Plaintiff's receipt of the Notice

of Final Decision.  Plaintiff was further informed in the Notice that if he did not request

such a hearing in the time and manner required, the Board might take the action

recommended by the Director and that action would be considered final.  Plaintiff nor his

counsel requested a hearing.  The hearing request time expired and the Board issued an

Order of Decertification on May 13, 1998, revoking Plaintiff's certification.[11]

All the Constitution requires is an opportunity to be heard before a person is

deprived of a property interest.  Plaintiff was provided that opportunity but failed to avail

himself of it – both after he received the Notice of Contemplated Action and after he

received the Notice of Final Decision.  Therefore, Defendant Hart, in recommending the

revocation of Plaintiff's certification, and Defendant NMLEA Board, in revoking

Plaintiff's certification, did not deprive Plaintiff of his procedural due process right in

acting as they did without a hearing on the merits being held first.  I will grant summary

judgment in favor of Defendant NMLEA Board and Defendant Hart, in his official

capacity, as to Count III.  Additionally, because Defendant Hart's conduct caused no

deprivation of Plaintiff's procedural due process rights, Defendant Hart, in his individual

---

[11] Furthermore, Plaintiff admitted in his deposition that he received notice that the Board would be meeting on May 13 to discuss his decertification and he understood that he could attend the meeting and present his side of the issues, but he did not attend the meeting.

capacity, is protected by qualified immunity as to Count III.

**E.  State Law Claim**

In Count IV (mislabeled in the Amended Complaint as Count III), Plaintiff alleges the state law tort of intentional infliction of emotional distress (IIED) as to Defendant Hart, in his individual capacity.  Plaintiff specifically alleges that (1) Defendant Hart acted outside the scope and authority of his employment when he reported unsubstantiated allegations of Plaintiff's misconduct to Defendant NMLEA Board; (2) the revocation of Plaintiff's certification has foreclosed his ability to find law enforcement employment and his ability to support himself in the only job for which he is trained; and (3) that Defendant Hart's actions were intentional, shocking, and beyond all common decency.

In their Notice of Removal, Defendants did not state they were removing the state law count or provide a jurisdictional basis for the removal of this count.  I will assume that Defendants intended to remove this count under 28 U.S.C. § 1367(a), providing for supplemental jurisdiction over a plaintiff's state law claims.

Defendants argue that Count IV must be dismissed because (1) Defendant Hart is immune from liability for such a claim under the New Mexico Tort Claims Act and (2) Plaintiff failed to provide timely and proper notice of his IIED claim, as required by § 41-4-16 of the New Mexico Tort Claims Act.  Plaintiff responds that Defendant Hart is not protected by sovereign immunity because he was acting outside the scope and course of his employment and that Tort Claims Act notice is not required for suit against state

employees.

The defense of lack of proper notice under the New Mexico Tort Claims Act applies to government entities.  It does not apply to public employees.  See Dunn v. New Mexico ex rel. Taxation and Revenue Dep't, 116 N.M. 1, 3-4, 859 P.2d 469, 471-72 (Ct. App. 1993); Dutton v. McKinley County Bd. of Comm'rs, 113 N.M. 51, 53, 822 P.2d 1134, 1135-36 (Ct.App. 1991); Frappier v. Mergler, 107 N.M. 61, 65, 752 P.2d 253, 357 (Ct. App. 1988). Therefore, Defendant Hart's request for summary judgment as to Count IV on the ground that Plaintiff failed to provide notice of his IIED claim will be denied.

I agree with Defendant Hart, however, that he is immune from suit under the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 to 41-4-29 (1996 Repl. Pamp. & 1999 Cum. Supp.), for the following reasons.  First, on the one hand, Plaintiff contends in his Amended Complaint and in his responsive pleadings that Defendant Hart acted outside the course and scope of his duty by recommending that Plaintiff be decertified without first conducting an investigation into the allegations which formed the basis for the decertification and by reporting unsubstantiated allegations of Plaintiff's misconduct to Defendant NMLEA Board.  On the other hand, however, he agrees with Defendants' statement of material fact that "[a]t all times relevant to his dealing and concerning Plaintiff . . . as alleged in the First Amended Complaint, Defendant Hart was . . . acting within the course and scope of his employment and in strict accordance with his duties as Director of the Defendant NMLEA Board."  Def. NMLEA Bd.'s Supp. Mem. at 4, ¶ 5; see Pl.'s Supp. Mem. at 3 ("Plaintiff makes reference to and incorporates herein as if

23

fully set forth below, [paragraphs 1-6 and 13-23 of Defendants'] Statement of Material Undisputed Facts"). In addition to his inconsistent stance as to whether Defendant Hart was acting within the scope and course of his employment, Plaintiff has submitted no evidence to counter Defendant Hart's affidavit in which he avers he was acting within the course and scope of employment and his duties as Director. Second, Defendant Hart, acting within the course and scope of his employment, is immune from tort liability, except where that immunity has been waived under the New Mexico Tort Claims Act. See N.M. Stat. Ann. §§ 41-4-2 (1996 Repl. Pamp.), 41-4-4 (1999 Cum. Supp.); see also Silva v. Town of Springer, 121 N.M. 428, 435, 912 P.2d 304, 311 (Ct. App. 1996). Plaintiff has identified no section of the Tort Claims Act waiving Defendant Hart's immunity and permitting his IIED cause of action against Defendant Hart. Furthermore, given that I have concluded that Defendant Hart did not violate Plaintiff's constitutional equal protection or procedural due process rights, it is questionable that Defendant Hart's conduct meets the "extreme and outrageous" standard required for IIED claims under New Mexico law. Coates v. Wal-Mart Stores, Inc., 127 N.M. 47, 57, 976 P.2d 999, 1009 (1999) ("To recover for intentional infliction of emotional distress, the claimant must show that the tortfeasor's conduct was extreme and outrageous under the circumstances, that the tortfeasor acted intentionally or recklessly, and that as a result of the conduct the claimant experienced severe emotional distress."); see also Dominguez v. Stone, 97 N.M. 211, 214-15, 638 P.2d 423, 426-27 (Ct. App. 1981). Therefore, I will grant summary judgment in favor of Defendant Hart as to Count IV.

## IV.   CONCLUSION

For purposes of this opinion, it is assumed that Defendants are "arms of the state." Defendants are not protected from suit by the Eleventh Amendment because by removing this cause of action and contesting the merits they have waived their immunity. Plaintiff's requested equitable relief that his certification be reinstated is construed to be as against Defendant NMLEA Board and not Defendant Hart, in his official capacity. Defendant NMLEA Board and Defendant Hart, in his official capacity, are not "persons" for purposes of § 1983.

In the alternative, because Defendants have met their summary judgment burden and Plaintiff has not met his, judgment must be granted in favor of Defendant NMLEA Board and Defendant Hart, in his official capacity, as to the § 1983 claims (Counts I, II, and III of the Amended Complaint).  Defendant Hart, in his individual capacity, is protected from suit as to the § 1983 claims by qualified immunity.  Furthermore, although alleged as a liberty interest claim, Count III is construed as alleging a property interest claim.

It is assumed for purposes of this opinion that Defendants intended to remove to federal court Plaintiff's state law claim (Count IV) against Defendant Hart in his individual capacity, although the removal jurisdiction for this count is not provided in the Notice of Removal. Plaintiff was not required by the New Mexico Tort Claims Act to provide Defendant Hart notice of his state law claim. However, because Defendant Hart has met his summary judgment burden and Plaintiff has not, judgment must be granted in

Defendant Hart's favor as to Plaintiff's state law claim.

**NOW, THEREFORE, IT IS ORDERED** that Defendant New Mexico Law

Enforcement Academy Board's Motion for Summary Judgment, filed May 12, 2000

[Doc. No. 10], is GRANTED IN PART AND DENIED IN PART as described herein.

Summary judgment is granted in favor of Defendant New Mexico Law Enforcement

Academy Board as to all relevant counts of Plaintiff's Amended Complaint.

**IT IS FURTHER ORDERED** that Defendant Hart's Motion for Summary

Judgment, filed May 12, 2000 [Doc. No. 12], is GRANTED IN PART AND DENIED IN

PART as described herein.  Summary judgment is granted in favor of Defendant Hart, in

his official and individual capacities, as to all relevant counts of Plaintiff's Amended

Complaint.

In summary, **IT IS ORDERED** that Plaintiff's Amended Complaint is dismissed

as to all Defendants.


_____
SENIOR UNITED STATES DISTRICT JUDGE


Counsel for Plaintiff:  Andrew D. Mills, Albuquerque, New Mexico

Previous Counsel for Defendants:  Robert D. Lohbeck, LEGAL BUREAU/RISK
MANAGEMENT DIVISION, STATE of NEW MEXICO, Santa Fe, New Mexico

Current Counsel for Defendants: Susan O. Weckesser and David J. Tourek, LEGAL
BUREAU/RISK MANAGEMENT DIVISION, STATE of NEW MEXICO, Santa Fe, New
Mexico

26